## BURNET, COMMISSIONER OF INTERNAL REVENUE, v. S. & L. BUILDING CORP.

No. 475. Argued February 10, 1933.—Decided March 13, 1933.

*Mr. Whitney North Seymour,* with whom *Solicitor General Thacher,* *Assistant Attorney General Youngquist,* and *Messrs. Sewall Key* and *John MacC. Hudson* were on the brief, for petitioner.

*Mr. Leo H. Hoffman,* with whom *Mr. George W. Perper* was on the brief, for respondent.

Mr. Justice McReynolds delivered the opinion of the Court.

The respondent, Building Corporation, sought redetermination of deficiency income taxes for 1924 and 1925. The Board of Tax Appeals sustained the Commissioner's final action of June 17, 1930; the court below reversed its judgment. The point now in controversy has relation to the distribution for taxation of income derived from sales on the installment plan of two pieces of real estate on 82nd and 83rd Streets, New York City. Each was covered by one or more mortgages which the purchaser assumed.

The Revenue Act 1926, c. 27, 44 Stat. 9, 23, 39, 41, § 230, lays a tax upon the net income of corporations. Section 232 provides—" In the case of a corporation subject to the tax imposed by section 230 the term 'net income' means the gross income as defined in section 233 less the deductions allowed by sections 234 and 206, and the net income shall be computed on the same basis as is provided in subdivisions (b) and (d) of section 212 or in section 226."

" Sec. 212 (b) The net income shall be computed . . . in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but . . . if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. . . .

"(d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term 'initial payments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made."

"Sec. 1208. The provisions of subdivision (d) of section 212 shall be retroactively applied in computing income under the provisions of . . . the Revenue Act of 1924, . . ."

Treasury Regulations 69, Article 44, promulgated August 28, 1926—as amended in 1929:—

"Art. 44. Sale of real property involving deferred payments.—Under section 212 (d) deferred-payment sales of real property fall into two classes when considered with respect to the terms of sale, as follows:

"(1) Sales of property on the installment plan, that is, sales in which the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale is made do not exceed one-fourth of the purchase price.

"(2) Deferred-payment sales not on the installment plan, that is, sales in which the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale is made exceed one-fourth of the purchase price.

"Sales falling within class (1) and class (2) alike include (a) agreements of purchase and sale which contemplate that a conveyance is not to be made at the outset, but only after all or a substantial portion of the purchase price has been paid, and (b) sales where there is an immediate transfer of title, the vendor being protected by a mortgage or other lien as to deferred payments.

"In the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, shall be included as a part of the 'purchase price,' but the amount of the mortgage, to the extent it does not exceed the basis to the vendor of the property sold, shall not be considered as a part of the 'initial payments' or of the 'total contract price,' as those terms are used in section 212 (d), in articles 42 and

45, and in this article. Commissions and other selling expenses paid or incurred by the vendor are not to be deducted .or taken into account in determining the amount of the ' initial payments,' the ' total contract price,' or the ' purchase price.'

"Art. 45. Sale of real property on installment plan.—In transactions included in class (1) in article 44, the vendor may return as income from such transactions in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the property is paid for bears to the total contract price."

In 1924 respondent sold the 82nd Street property, then under mortgage which it had executed to secure a loan of $1,100,000, payable in semi-annual installments of $22,000 until 1933, when the balance would become due. The purchaser assumed the mortgage; paid $300,000 in cash; agreed to pay $700,000, and secured this by a purchase-money mortgage. Upon the latter mortgage $30,000 was paid in 1924 and $36,250 in 1925. In 1924 and 1925, respectively, the purchaser paid upon the assumed mortgage $22,000 and $24,000.

The Commissioner estimated the depreciated cost of the property at $1,541,323.48. Subtracting this from the total sale price, $2,100,000, he ascertained realized profit—$558,676.52.

He ruled that for 1924 the taxable sum was the same proportion of the amount actually received during the year ($330,000) as the entire profit ($558,676.52) was of the total ($1,000,000) payable directly to the taxpayer—55% plus. He excluded the assumed mortgage from the total used for determining the applicable percentage, and held " total contract price " was what the purchaser agreed to pay directly to the vendor—the whole amount which the taxpayer expected to receive in money.

Payments received by respondent during 1925 were likewise assessed.

In 1925 respondent sold the 83rd Street property, then subject to two mortgages which it had executed to secure loans of $1,100,000 and $500,000 respectively, payable in installments—six and three months—until 1933 and 1934, when the balance would become due. The purchaser assumed both mortgages; paid $300,000 in cash; and agreed to pay $265,000, and secured this by a purchase-money mortgage. On the latter obligation $2,000 was paid in 1925. During 1925 the purchaser paid on the assumed second mortgage $22,500.

The Commissioner fixed the depreciated cost of the property at $1,522,035. Subtracting this from the total sale price, $2,165,000, he found the realized profit—$642,967. He ruled that the difference ($77,967) between the base, or depreciated cost ($1,522,033) and the total of the assumed mortgages ($1,600,000) should be treated as if received in money by the taxpayer during 1925; also, that the sum subject to taxation in 1925 was the same proportion of what the taxpayer received, actually and constructively, during the year ($302,000 plus $77,967) as the realized profit ($642,967) was of the total amount ($565,000) which the purchaser agreed to pay directly to the taxpayer—100% plus.

He excluded the amount of the assumed mortgages from the totals used to determine the applicable percentage, and payments on them were not regarded as received by the vendor. He also treated as if cash received by the vendor in 1925, the difference between the depreciated cost and the total of the assumed mortgages. " Total contract price " was held to be the total amount payable directly to the vendor.

The respondent maintains that the assumed mortgages should be regarded as part of the contract price, and payments upon them by the purchaser should be treated as money received by the vendor. In this way, it is said

the tax would be spread over the entire life of the assumed mortgage. And it further insists that the excess of the assumed mortgages over the depreciated value of the 83rd Street property should not be regarded as if money actually received by the vendor during 1925.

Respondent's books were kept upon the accrual basis; but all agree that in the circumstances the Revenue Act of 1926 permitted assessments upon the installment basis. The Commissioner undertook to act according to his prescribed regulations.

Prior to the Act of 1926, the Revenue Acts definitely recognized only two bases for tax returns—cash· and accrual. Where sales were upon the installment plan, application of either of these bases led to hardship; payment of the total tax on ascertained profit was often required in a single year. By regulations the Commissioner offered some alleviation; the vendor was allowed to distribute the profit through the years during which purchase-money was actually received. The general principle underlying these regulations was to make division of partial payments and apply part as return of capital and part to profit. In 1926 the Board of Tax Appeals disapproved of the earlier regulations and pointed out that the statutes permitted returns only upon the cash or accrual basis. Thereupon, Congress enacted § 212 (d), above quoted. The end in view was to permit the Commissioner to make assessments according to the general principle theretofore followed under regulations deemed appropriate to the varying situations. The new plan was optional; taxpayers were allowed to elect whether to make returns under the regulations upon the new basis or upon one of the old bases.

The Conference Report to the House, on Revenue Act of 1926, p. 32, H. R., Vol. I, 69th Cong., 1st Sess., 1925–1926, declares concerning § 212 (d): "This amendment

writes into the bill the basic principles of the installment method authorized by prior regulations." See Report Senate Committee on Finance, No. 52, 69th Congress.

Installment sales of real estate encumbered by liens give rise to many complications which Congress could not readily foresee. Accordingly, it entrusted to the Commissioner wide discretion in respect of details. And considering the practical requirements of the taxing system, we think the regulations now challenged constitute a fair attempt to effectuate the legislative intent. They are within the broad discretion granted to the Commissioner and violate no definite provision of the statute.

The amounts which respondent realized as profits are not in question. These were subject to taxation either upon the accrual basis or, at the taxpayer's option, on the installment basis. Generally, the Commissioner's regulations permitted the tax payments to be spread over the period during which the taxpayer would receive funds, and divided these partly into return of capital and partly into profits actually collected. The method suggested by the respondent would inevitably lead to many practical difficulties; might postpone collection far beyond the time when the vendor would receive any direct payments; and probably would render impossible determination from the taxpayer's books of what he should account for.

The Commissioner's treatment of the excess of the mortgages on the 83rd Street property over the base cost followed the general purpose to place reasonable limitation upon the spread of the tax. It was appropriate in the unusual circumstances presented—certainly not prohibited. It was a practical way to accomplish the end. Some possible departure from the method prescribed for ordinary circumstances is not enough to destroy what he deemed necessary to meet unusual conditions.

The excess of $77,967 under the sale agreement would never actually come into the vendor's hands, but it rep-

resented part of the admitted profits and was subject to taxation. No positive provision in the statute required that it be spread over subsequent years, and we think there was nothing illegal or oppressive in treating this as if an actual payment. The taxpayer has been treated more leniently than if required to report upon the accrual basis. The Regulations were not contrary to any positive provisions of the statute and, as said by the Board of Tax Appeals, were "both equitably and legally sound."

Since 1926, the Board has consistently upheld the Commissioner's regulations as to profits on installment sales. Frank J. Bosshardt, 4 B. T. A. 1262; Dalriada Realty Co., Inc., 5 B. T. A. 905; Pacheco Creek Orchard Co., 12 B. T. A. 1358; Katherine H. Watson, 20 B. T. A. 270; Fifty-three West Seventy-second Street, Inc., 23 B. T. A. 164; Metropolitan Properties Corp., 24 B. T. A. 220. And the Revenue Acts of 1928 and 1932 substantially reenacted the pertinent provision of the Act of 1926.

The Commissioner and Board of Tax Appeals have practical knowledge of the intricate details incident to tax problems, and their determination in circumstances like those under consideration here should be given effect when not clearly contrary to the will of Congress.

*Reversed.*