**James H. MARSHALL and Thelma Marshall, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 2922–SD.**

United States District Court
S. D. California, S. D.

Sept. 30, 1964.

Harlan F. Harmsen of Driscoll, Harmsen & Wilkins, San Diego, Cal., for plaintiffs.

Francis C. Whelan, U. S. Atty., Los Angeles, Cal., by Loyal E. Keir and Herbert D. Sturman, Asst. U. S. Attys., Los Angeles, Cal., for the United States.

JAMES M. CARTER, District Judge.

The case was presented for decision on an agreed statement of facts.

It raises a question heretofore undecided, namely—

Whether the assumption by the purchaser of the accounts payable of the plaintiffs-sellers' business constituted "payments actually received in that year" of sale under Section 453 of the Internal Revenue Code of 1954?

## FACTS

Plaintiffs, husband and wife, were engaged in an agricultural business as sole proprietors. For legitimate business reasons, a corporation was formed to purchase the assets of said business, with the plaintiffs owning 60% of the shares. On April 1, 1959, the sale was consummated for the sum of $110,513.22, payable in the following manner: the corporation assumed the current liabilities amounting to $25,568.86, and also assumed an account payable to plaintiffs for $9,944.36, and executed a promissory note payable to the plaintiffs for the balance of the purchase price, viz., $75,000. During the remainder of 1959, the corporation paid in the ordinary course of business the current liabilities ($25,568.86) and the plaintiffs received payment in full of their $9,944.36 account and an additional sum of $4,000 on the $75,000 promissory note.

Since plaintiffs' adjusted basis of these business assets was $90,225.83, there was a long-term capital gain of $20,287.39. Plaintiffs reported said gain on their joint 1959 federal income tax return on the installment method provided under Section 453 of the Internal Revenue Code of 1954. The Commissioner of Internal Revenue disallowed the installment method of reporting said gain, contending that more than 30% of the selling price was "actually received" by plaintiffs in 1959, making the entire amount of said gain taxable in 1959.

After paying the deficiency and penalties assessed by the Commissioner for 1959, in connection with this gain, plaintiffs brought the present suit to recover this assessment together with interest thereon.

## DISCUSSION

■■ Income from the casual sale of personal property may be reported on the installment method if, in the taxable year of the sale, there are no payments, or the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30% of the selling price. 26 U.S.C. § 453. The reason for such a provision in the Internal Revenue Code was clearly stated in Commissioner of Internal Revenue v. South Texas Lumber Co., (1948) 333 U.S. 496, 503, 68 S.Ct. 695, 700, 92 L.Ed. 831:

> "The installment basis of reporting was enacted, as shown by its history, to relieve taxpayers who adopted it from having to pay an income tax in the year of sale based on the full amount of anticipated profits when in fact they had received in cash only a small portion of the sales price."

A quick review of the facts clearly indicates that the present case is typical of those transactions that should be reported on the installment basis. Out of the selling price of some $110,000, plaintiffs received nothing at the time of the transaction in the form of cash; during the remainder of 1959, they "received in cash only" approximately $14,000, out of which "small portion of the sales price" the government has extracted the total tax payable on the long-term capital gain of approximately $20,000. The fact that plaintiffs are lawfully entitled to receive the balance owing on the promissory note of $71,000 does not seem to be as important to the government as does the fact that the current liabilities of $25,000 were paid by the corporation in the same year they were assumed.

■ When the installment basis of reporting income relates to a real estate transaction, it is well settled that the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, is not to be considered as a part of the "payments actually received in that year" of sale. Sec.

1.453–4(c), Income Tax Regs. (1964); J. W. McWilliams (1929) 15 B.T.A. 329; Denco Lumber Co. (1962) 39 T.C. 8.

In this case, we are concerned with a casual sale of personal property rather than a real estate transaction; both types of these transactions are covered by the same Section 453 of the Internal Revenue Code however. By analogy, therefore, it should logically follow that the assumption of plaintiffs' accounts payable should in no wise be considered as "payments actually received in that year" of sale any more than the assumption of a mortgage in a real estate transaction is. Such an analogous treatment is advocated in 2 Mertens, Law of Federal Income Taxation, (rev. ed. 1961) 38, § 15.16, where the author states that:

> "[t]he 'contract price' is the selling price with the important proviso that it does not include the amount of any mortgage on the property to the extent the mortgage does not exceed the basis of the property to the vendor. * * * *Debts of the vendor assumed by the purchaser are treated in the same way as mortgages,"* [emphasis added]

citing J. W. McWilliams, supra, and Stephen A. Cisler, Jr., (1962) 39 T.C. 458.

In Stephen A. Cisler, Jr., supra, the Tax Court was presented with the question of the applicability of Section 453 in a sale of corporate stock wherein the purchaser assumed the seller's indebtedness owing on said stock. Although the taxpayer was denied the privilege of reporting this transaction on the installment basis, the decision hinged on other grounds. As to the question of whether purchaser's assumption of seller's debts constituted "payments actually received in that year" of sale, the court said at page 466:

> "Both the petitioner and the respondent agree that I.T. 2468, VIII–1 C.B. 159, is applicable. It holds that the amount of a mortgage on the property sold is not includable as part of the 'initial payments,' *to the*

*extent it does not exceed the basis to the vendor of the property sold,* and an indebtedness of the vendor of stock, for which the stock has been pledged, is similar enough to a mortgage to fall within the rule. The significance of this principle, as applied to the facts here, is that the petitioner had no basis in the common stock."

In this case, the court used the term "initial payments" since the stock transaction arose at a time when the Internal Revenue Code of 1939 was in effect; the word "initial" was deleted from Section 453 of the Internal Revenue Code of 1954.

Thus, had the taxpayer's basis of the common stock been equal to the sale price, according to Stephen A. Cisler, Jr., supra, the assumption of the taxpayer's debts by the purchaser would not have constituted "payments actually received in that year" of sale. In the present case, plaintiffs' basis of some $90,-225.83 vastly exceeded their indebtedness of $25,568.86 which the purchasing corporation assumed. By analogy, it therefore follows that no part of said indebtedness assumed by the purchasing corporation should be considered as "payments actually received in that year" of sale by the plaintiffs.

Plaintiffs do not seek to evade the federal income tax on their long-term capital gain, but only attempt to avoid paying the entire amount of the tax in the year of the sale of their business. Plaintiffs have complied with the unambiguous requirements of the Code—that the "payments actually received in that year" of sale did not exceed 30%—and therefore, should have been entitled to report said gain on the installment basis.

Therefore, it is the opinion of this court that the assumption by the purchaser of the accounts payable of the plaintiffs-sellers' business did not constitute "payments actually received in that year" of sale by plaintiffs under Section 453 of the Internal Revenue Code of 1954.

Decision will be in favor of the plaintiffs as prayed. Counsel for plaintiffs will prepare, serve and file findings of fact and conclusions of law and judgment in a separate document.