**UNITED STATES of America,**
**Defendant-Appellant,**

v.

**James H. MARSHALL and Thelma**
**Marshall, Plaintiffs-Appellees.**

**No. 20110.**

United States Court of Appeals
Ninth Circuit.

March 8, 1966.

Manuel L. Real, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Chief, Tax Div., James S. Bay, Asst. U. S. Atty., Los Angeles, Cal., Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Fred E. Youngman, Attys., Dept. of Justice, Washington, D. C,. for appellant.

Driscoll, Harmsen & Wilkins, by Harlan F. Harmsen, John Gerald Driscoll, Jr., San Diego, Cal., for appellee.

Before MERRILL and DUNIWAY, Circuit Judges, and TAVARES, District Judge.

TAVARES, District Judge:

In 1959 Plaintiffs-Appellees sold their sole proprietorship business to a corporation, 60% of whose stock was owned by them. The $110,513.22 sale price was to be paid by the corporation assuming a $9,944.36 account owing to appellees, by its assuming $25,568.86 in current liabilities of the proprietorship, and by its executing a promissory note to the appellees for $75,000. During 1959 plaintiffs received payment of the $9,944.36 account plus $4,000 in payment on the $75,000 note, and, in the ordinary course of business, the corporation paid obligations totaling $25,568.86 for which appellees had been personally liable.

Appellees reported the resulting $20,-287.39 long-term capital gain on an installment basis, pursuant to 26 U.S.C. § 453. The Commissioner of Internal Revenue disallowed the installment basis for returning the gain, contending that appellees received more that 30% of the selling price in 1959 by virtue of the corporation paying the $25,568.86 in current business obligations for which appellees had been personally liable.

Title 26 U.S.C. § 453 provides in material part, " * * * [i]ncome from * * * a casual sale or other casual disposition of personal property * * * for a price exceeding $1,000, may (under regulations prescribed by the Secretary or his delegate) be returned on [the installment plan by returning as income in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price]."

But this provision applies "only if in the taxable year of the sale * * * the payments * * * do not exceed 30 per cent of the selling price."

The question we face is whether the phrase "payments actually received" includes payment by the purchaser of business debts assumed by it. We are aided in our task of statutory construction by the construction which the Treasury Department has given to this phrase through regulations and rulings.

Treasury Regulations (26 CFR § 1.453–4) expressly provide that where a sale of real property involves deferred periodic payments, the amount of a mortgage is included in computing the selling price, but is excluded (to the extent it does not exceed the seller's basis) in determining the amount of payments received by the seller in the year of sale. By their terms these regulations apply whether or not the mortgage is assumed by the purchaser, and even apply where there is no mortgage, but merely a contract of sale.[1]

These regulations, sometimes referred to as the "mortgage rule," have been extended, by analogy, to sales of personal property. C.I.T. 2468, VIII–1 Cum.Bull. 159, at 160 (1929):

"Held, the effect of the assumption by the purchaser of the unpaid balance due from the taxpayer on the stock mentioned is considered to be the same as that of the assumption of an existing mortgage in connection with the sale of property."

And see the dictum to the same effect in Stephen A. Cisler, Jr., (1962) 39 T.C. 458, 466.

In the case at bar the District Court held (Marshall v. United States, 241 F. Supp. 30) that the assumption of current

business obligations by the purchasing corporation was analogous to the assumption of a mortgage by a purchaser of real property or to the assumption by the purchaser of personal property, of an obligation secured by that personal property, and that therefore the amount of those obligations should not be considered payments actually received in the year of sale by the sellers. The District Court quoted as follows from Commissioner of Internal Revenue v. South Texas Lumber Co., (1948) 333 U.S. 496, 503, 68 S.Ct. 695, 92 L.Ed. 831 to show the reason for the enactment of the installment payment provisions:

"The installment basis of reporting was enacted, as shown by its history, to relieve taxpayers who adopted it from having to pay an income tax in the year of sale based on the full amount of anticipated profits when in fact they had received in cash only a small portion of the sales price."

We agree with the trial court that the quoted reasoning applies with equal force to the facts of the case at bar. Here the sellers received less than $14,000 in cash during the year of sale, and if the installment method is denied to them, they must pay taxes, in one year, on a gain that exceeds $20,000.

The government argues that administrative convenience motivated the regulations excluding mortgages in computing payments actually received in the year of sale, and quotes the following from Burnet v. S. & L. Building Corporation, 288 U.S. 406, 414, 53 S.Ct. 428, 430, 77 L.Ed. 861:

"The method suggested by the respondent would inevitably lead to many practical difficulties, might postpone collection far beyond the

1. See 26 C.F.R. § 1.453–4(a) which provides:

"*Sale of real property involving deferred periodic payments.*

"(a) *In general.* Sales of real property involving deferred payments include (1) agreements of purchase and sale which contemplate that a conveyance is not to be made at the outset, but only

after all or a substantial portion of the selling price has been paid, and (2) sales in which there is an immediate transfer of title, the vendor being protected by a mortgage or other lien as to deferred payments."

See also J. W. McWilliams, 15 B.T.A. 329, 342–343.

time when the vendor would receive any direct payments; and probably would render impossible determination from the taxpayer's books of what he should account for."

Obviously the same may be said of current business obligations assumed by a purchaser. It may be extremely difficult for the seller to determine what obligations have been paid by the purchaser and the dates of payment. Certainly the seller could not make such determination from his own books. And the period during which such assumed obligations are paid might well be very different from the period during which the seller . receives, or is to receive, direct payments.

No case has been cited that is directly in point. Most of the cases cited by the government do not involve installment sales. The issue in Sterling v. Ham, D. C., 3 F.Supp. 386, was whether a portion of the initial payment which had to be made when the deal was closed, and which was to be paid to the holder of an outstanding mortgage claim upon the property, was a part of the initial payment. The case differs from this one in that here the agreement did not require the current liabilities to be paid off within the first year; thus some or all of them could have been paid after the initial year, 1959. Tombari v. Commissioner of Internal Revenue, 299 F.2d 889 (9 Cir.), involved the valuation of the consideration. The facts in Corona Flushing Company v. Commissioner of Internal Revenue, 22 B.T.A. 1344, were peculiar, in that the seller received $8,-040, then turned back $458.52 to the buyer in accordance with the terms of their agreement; the seller argued that he should be permitted to report the transaction according to its net effect. In Wagegro Corp. v. Commissioner of Internal Revenue, 38 B.T.A. 1225, there was no assumption by the purchaser of numerous obligations of the seller: the purchaser paid a single item of expense (attorney fees incurred in connection with the sale). Caldwell v. United States, 114 F.2d 995 (3 Cir.), and Freeman v. Commissioner of Internal Revenue, 303

F.2d 580 (8 Cir.), both decided that money and notes received by the seller from a third party, not the purchaser, constituted part of the selling price.

We conclude that the payment of business debts here in question is not such a payment to the seller as is contemplated by Section 453.

The judgment of the District Court is hereby affirmed.