Ivan IRWIN, Jr. and Ann Vanston Irwin et al., Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 24182.

United States Court of Appeals
Fifth Circuit.

Feb. 20, 1968.

Neil J. O'Brien, Dallas, Tex., Wynne, Jaffe & Tinsley, Dallas, Tex., for petitioners.

Lester R. Uretz, Chief Counsel, Hu S. Vandervort, Atty., I.R.S., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Stuart A. Smith, Attys., Dept. of Justice, Washington, D. C., Harold C. Wilkenfeld, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before BROWN, Chief Judge, and BELL and THORNBERRY, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

The sole issue for determination on this review of a Tax Court decision is whether the gain realized by appellant taxpayers on the sale of their business is taxable in full in the year of sale. The Tax Court, sustaining the Commissioner of Internal Revenue, held that it was. The taxpayers contend that they were entitled to report the gain on the installment method as provided in § 453(b) (1) (B) of the Internal Revenue Code of 1954.[1] The issue narrows

1. § 453. INSTALLMENT METHOD.
(a) Dealers in Personal Property.—
(1) In General.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.
(2) Total Contract Price.—For purposes of paragraph (1), the total contract price of all sales of personal property on the installment plan includes the amount of carrying charges or interest which is determined with respect to such sales and is added on the books of account of the seller to the established cash selling price of such property. This paragraph shall not apply with respect to sales of personal property under a revolving credit type plan or with respect to sales or other dispositions of property the income from which is, under subsection (b), returned on the basis and in the manner prescribed in paragraph (1).
(b) Sales of Realty and Casual Sales of Personalty.—
(1) General Rule.—Income from—
(A) a sale or other disposition of real property, or
(B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close

to the question whether taxpayers as sellers lost the right to return the gain on the installment basis by reason of the payment by the purchasers during the year of sale of liabilities due by the sellers to third persons and assumed by purchasers. The inclusion of these payments would make the total payment received during the year of sale exceed thirty per cent of the selling price and thus eliminate the gain from installment basis treatment. 26 U.S.C.A. § 453(b) (2) (A) (ii). The judgment of the Tax Court is due to be affirmed if the payment of these assumed liabilities by the purchasers to third persons during the year of sale are, under the statute, "payments in the year of sale" to the taxpayers; otherwise not. We hold they were not and reverse.[2]

In 1959 taxpayers sold their insurance business, which was operated as a partnership, for the total amount of $471,539.64. The purchasers paid $81,539.64 in cash at the closing and delivered promissory notes to taxpayers for the balance of $390,000.00. No part of this balance was paid in 1959. In addition, the purchasers assumed the partnership business liabilities existing as of May 1, 1959, in the amount of $271,186.95. No part of this sum was due purchasers. They paid a total of $237,974.05 during 1959, the year of sale, on these liabilities. These payments were made in the regular course of the business and included insurance premium notes payable, accounts payable to insurance companies, payroll taxes, and various automobile notes and other accounts payable. The Tax Court considered the $237,974.05 payment of these business liabilities by the purchasers as part of the payment received by the taxpayers as sellers in the year of sale within the meaning of § 453(b) (2) (A) (ii), supra. As a result, according to the Tax Court, taxpayers received more than thirty per cent of the selling price during the year of sale and thus were not entitled to report their gain from the sale on the installment basis.

This case presents a square conflict between the decision of the Tax Court in this case and a decision of the Court of Appeals for the Ninth Circuit which was

---

of the taxable year) for a price exceeding $1,000,

may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).

(2) Limitation.—Paragraph (1) shall apply—

(A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition—

(i) there are no payments, or

(ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.

(B) In the case of a sale or other disposition during a taxable year beginning before January 1, 1954, only if the income was (by reason of section 44(b) of the Internal Revenue Code of 1939) returnable on the basis and in the manner prescribed in section 44(a) of such code.

2. Taxpayers assert an additional theory for reversal. They would fragment the sales price into payment for good will on the one hand and payment for assets on the other and thus avoid the thirty per cent stricture. The government contends that this theory was withdrawn in the Tax Court and thus not considered there. In the view we take of the case we might forego decision on this theory but we think it warrants the statement, aside from the procedural bar asserted by the government, cf. Helvering v. Wood, 1940, 309 U.S. 344, 348–349, 60 S.Ct. 551, 84 L.Ed. 796; General Utilities & Operating Co. v. Helvering, 1935, 296 U. S. 200, 206, 56 S.Ct. 185, 80 L.Ed. 154, that there is no warrant whatever for such fragmentation. There was one sale for one price and it would be exalting form over substance to sustain such a fragmentation approach. Cf. Commissioner of Internal Revenue v. Court Holding Company, 1945, 324 U.S. 331, 65 S. Ct. 707, 89 L.Ed. 981; Reef Corporation v. Commissioner of Internal Revenue, 5 Cir., 1966, 368 F.2d 125, 130; General Guaranty Mortgage Company v. Tomlinson, 5 Cir., 1964, 335 F.2d 518, 520; Hindes v. United States, 5 Cir., 1964, 326 F.2d 150, 151.

decided just nine days prior to the Tax Court decision. United States v. Marshall, 9 Cir., 1966, 357 F.2d 294. The facts in the *Marshall* case were that the taxpayers, husband and wife, sold their proprietorship to a corporation. A part of the sales price was to be paid by the assumption of the current liabilities of the proprietorship by the purchaser corporation. The balance of the purchase price was represented by a promissory note. The current liabilities of the proprietorship were paid by the corporation in the year of sale in the ordinary course of business. The Commissioner disallowed the installment method of reporting the gain on the sale, contending that taxpayer received more than thirty per cent of the selling price in the year of sale. This depended on whether the sums paid by the corporation on the assumed current liabilities of the proprietorship (taxpayers) were to be included as a payment received by sellers in the year of sale.

The Court of Appeals, affirming the ruling of the District Court in favor of the taxpayer and against the contention of the Commissioner, concluded that the payment of the current obligations by the purchaser should not be included as payment received by the sellers during the year of sale within the meaning of the thirty per cent qualification, § 453(b) (2) (A) (ii), supra. The applicable Treasury Regulation, 26 CFR § 1.453–4,[3] relating to the sale of real property and the exclusion of the amount of an assumed mortgage as a "payment" except as it exceeds basis was extended to cover the personal property situation.

The court noted that the purpose of the installment payment provision was to relieve taxpayers from having to pay an income tax in the year of sale based on the full amount of anticipated profits when in fact they had received in cash only a small portion of the sales price, citing Commissioner of Internal Revenue v. South Texas Lumber Company, 1948, 333 U.S. 496, 503, 68 S.Ct. 695, 92 L.Ed. 831. See also Burnet v. S & L Building Corporation, 1933, 288 U.S. 406, 53 S.Ct. 428, 77 L.Ed. 861. The court also noted that the Treasury Regulation, supra, had been extended, by analogy, to

---

**3.** § 1.453–4. Sale of real property involving deferred periodic payments—(a) *In general.* Sales of real property involving deferred payments include (1) agreements of purchase and sale which contemplate that a conveyance is not to be made at the outset, but only after all or a substantial portion of the selling price has been paid, and (2) sales in which there is an immediate transfer of title, the vendor being protected by a mortgage or other lien as to deferred payments.

(b) *Classes of sales.* Such sales, under either paragraph (a) (1) or (2) of this section, fall into two classes when considered with respect to the terms of sale, as follows:

(1) Sales of real property which may be accounted for on the installment method, that is, sales of real property in which (i) there are no payments during the taxable year of the sale or (ii) the payments in such taxable year (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price, or

(2) Deferred-payment sales of real property in which the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale is made exceed 30 percent of the selling price.

(c) *Determination of "selling price".* In the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser; shall, for the purpose of determining whether a sale is on the installment plan, be included as a part of the "selling price"; and for the purpose of determining the payments and the total contract price as those terms are used in section 453, and §§ 1.453–1 through 1.453–7, the amount of such mortgage shall be included only to the extent that it exceeds the basis of the property. The term "payments" does not include amounts received by the vendor in the year of sale from the disposition to a third person of notes given by the vendee as part of the purchase price which are due and payable in subsequent years. Commissions and other selling expenses paid or incurred by the vendor shall not reduce the amount of the payments, the total contract price, or the selling price.

the sale of personal property, citing I.T. 2468, VIII–1 Cum.Bull. 159, at 160 (1929), and a dictum in Stephen A. Cisler, Jr., 39 T.C. 458, 466 (1962).

The Tax Court was of the view that the decided cases indicated that a payment of assumed obligations in the year of sale had to be included as a payment within the thirty per cent statutory qualification. We have examined the cases cited by the Tax Court as authority for this proposition. No one of the cases is directly in point. The payment involved in W. H. Batcheller, 19 B.T.A. 1050 (1930), was the cancellation by the purchaser of a debt due him by the seller as part of the purchase price. Here there was no cancellation; the business debts were assumed. In Wagegro Corporation, 38 B.T.A. 1225 (1938), payment by the purchaser of the legal expenses incurred by the seller in the sale was regarded as part of the initial payment. Again, there was no assumption; the payment was in fact made as part of the agreed initial purchase price. James Hammond, 1 T.C. 198 (1942), involved a three party transaction. The purchaser was to pay the purchase price over to a third party who simultaneously with the sale cancelled a debt due it by seller and also advanced cash to the seller. The seller executed notes to the third party to cover the cancellation and advance but was not personally liable thereon; the third party had to look to the purchaser for his payment. The substance of this transaction was a payment in the year of sale because of the effective cancellation by the purchaser of the new debt due the third party by the seller. The purchaser and the third party simply relieved the seller of liability. He received his old notes and cash for the new note on which he was not liable.

The cases which involve cancellation of debts of the seller due either to the purchaser or to a third party are to be distinguished from cases involving an assumption by the purchaser of the seller's obligation to a third party. See Riss v. Commissioner of Internal Revenue, 10 Cir., 1966, 368 F.2d 965. Riss also involved the cancellation of a debt due

by the seller to the purchaser as a part of the purchase price.

The Tax Court drew a distinction between the assumption of a debt which is paid in the year of sale and an assumption which is not paid in the year of sale. Cf. Estate of Lipman v. United States, 6 Cir., 1967, 376 F.2d 455, on time of cancellation. The validity of such a distinction is the real question presented to us and we must affirm the Tax Court or follow the *Marshall* decision. In *Marshall* no such distinction was drawn because of the mortgage analogy. That case dealt with the assumption of current business liabilities which were in fact paid during the year of sale. The assumed liabilities, although paid, were excluded as a payment in the year of sale within the meaning of the thirty per cent qualification of the statute. This exclusion was based on the mortgage proviso of the Treasury Regulation, 1.453–4, supra.

In *Marshall* the taxpayers operated an agricultural business as a proprietorship. See Marshall v. United States, S.D.Cal., 1964, 241 F.Supp. 30. The sales price was $110,513.22 which included, *inter alia*, the assumption of $25,568.86 in current liabilities of the proprietorship. These were paid in the year of sale and together with other payments received by seller in the year amounted to more than thirty per cent of the sales price.

In the case here the taxpayers, as a partnership, conducted and managed a general fire and casualty insurance agency which served as a middle man between several insurance companies and local agents. The local agents sold insurance policies to the public and collected premiums therefor, retaining their commissions out of premiums collected and remitting the balances to the partnership The partnership then deducted its commissions and paid the balance to the insurance companies. The partnership operated on the accrual method of accounting. Upon receiving information that a policy had been sold by a local agent, the partnership would debit accounts receivable for the amount due from the local agent and credit accounts

payable for the amount due the insurance companies. The accounts receivable entries were included on the partnership balance sheet as assets and the accounts payable to the insurance companies and others were included as current liabilities. All were short term liabilities. For example, when the partnership business was sold, the sum of $149,299.67 was due insurance companies on premium payments. Premiums were due the insurance companies not later than ninety days after the sale of a policy. At the time the partnership business was sold the local agents owed corresponding amounts to the partnership for premiums.

We agree with the *Marshall* Court that these current liabilities, although assumed and paid, are not, under the statute, payments within the year of sale. They are excluded by reason of the mortgage assumption exception of the Regulation, supra. See 2 Mertens, Law of Federal Income Taxation, (rev. ed. 1967), § 15.16. Appellants were entitled to the benefit of the installment method under § 453, supra. There was no excess over basis in these assumed debts so no part was includible as a payment in the year of sale. See Stephen A. Cisler, supra, on the question of excess over basis.

Reversed and remanded for further proceedings not inconsistent herewith.