JOE KELLY BUTLER, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 13069-79, 33799-84.     Filed September 29, 1986.

*Rudy M. Groom, Andrew W. Miller,* and *Lawrence E. Naiser,* for the petitioner.

*Janet R. Kluth,* for the respondent.

OPINION

GOFFE, *Judge*: The Commissioner determined deficiencies in petitioner's Federal income tax as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 13069-79 | 1974 | $459,559.02 |
| | 1975 | 41,505.09 |
| 33799-84 | 1977 | 77,067.77 |
| | 1978 | 1,039.95 |

After concessions, the sole issue remaining for decision is whether petitioner is entitled to use the installment method to report gain attributable to the sale of real property sold as part of a bulk sale of assets.

This case was submitted fully stipulated under Rule 122.[1] The stipulation of facts and stipulated exhibits are incorporated herein by this reference.

Joe Kelly Butler, Inc. (petitioner), was a Texas corporation during the years in issue. Petitioner's principal place of business was Houston, Texas, at the time of the filing of the petitions in this case. Petitioner filed its Federal income tax returns for the taxable years 1974, 1975, 1977, and 1978 with the Internal Revenue Service Center in Austin, Texas.

In 1947, petitioner acquired 15.73 acres of land in Harris County, Texas, for $14,676. Petitioner constructed improvements on the land during the years 1947 through 1973 at a cost of $166,918 and deducted depreciation during those years of $50,676.

On December 4, 1972, petitioner borrowed $875,000 from Great Commonwealth Life Insurance Co. of Dallas, Texas, and pledged the land as collateral. The proceeds of the loan were used by petitioner for working capital or to repay prior loans for which the land had been pledged as collateral.

On October 1, 1974, petitioner sold various assets, including the land, to Mitchell Energy Corp. (Mitchell) for a total consideration of $6,401,345. The consideration consisted of $246,900 in cash, a $5,357,538 promissory note, and the assumption of the promissory note encumbering the land. The principal balance remaining on the assumed note was $796,907.

The sales agreement provided:

---

[1]Unless otherwise indicated, all Rule references are to the Rules of Practice and Procedure of this Court, and all section references are to the Internal Revenue Code of 1954 as amended and in effect for the relevant years.

THIS AGREEMENT dated the 17th day of September, 1974, between BUTLER DRILLING COMPANY[2] (hereinafter referred to as "Butler"), * * * and MITCHELL ENERGY CORPORATION, a Texas corporation, with offices at 3900 One Shell Plaza, Houston, Texas (hereinafter referred to as "Mitchell");

WITNESSETH:

*Section 1.1.* Subject to the remaining provisions of this Agreement, Butler, * * * agrees to sell and convey to Mitchell (or to such affiliated corporations of Mitchell as Mitchell may designate at the closing) and Mitchell agrees to purchase * * * the entire operating assets described * * * in Exhibit "A" which is attached hereto and incorporated herein for all purposes (which are herein called the "Properties"). * * *

*Section 1.2.* Subject to the remaining provisions of this Agreement, Mitchell agrees to pay the sums set forth below * * * :

(a) *Butler.* Mitchell hereby agrees to purchase the assets of Butler as set forth on Exhibit "A" for a total purchase price of $5,604,438, subject to adjustment in accordance with Sections 1.8 and 1.9 of this Agreement. Said consideration shall be payable as follows:

(i) Mitchell shall pay to Butler at closing the sum of $246,900 in cash (Mitchell's $75,000.00 payment deposited with the letter of intent dated August 2, 1974, shall be credited toward this payment); and

(ii) Mitchell shall deliver to Butler at the closing its promissory note payable to Butler in the total principal amount of $5,357,538 containing the provisions set forth in Section 1.5 of this Agreement and secured as set forth in Section 1.6 of this Agreement.

\* \* \* \* \* \* \*

*Section 1.4.* The Mitchell affiliated corporation receiving title to the 15.73 acres of land described in Exhibit "D" will assume the outstanding balance at closing of that certain promissory note in the original principal sum of $875,000.00, dated December 4, 1972, executed by Butler Drilling Company and payable to the order of Great Commonwealth Life Insurance Company, Dallas, Texas, secured by a deed of trust covering said land; the balance of said promissory note at October 1, 1974, will be no more than $796,906.72.

The parties agree that the fair market value on September 17, 1974, of each category of property sold was as follows:

| | |
|---|---:|
| Land | $1,268,585 |
| Building | 478,322 |
| Furniture and fixtures | 72,000 |
| Equipment | 11,976 |
| Drilling rigs | 4,570,462 |
| Total | 6,401,345 |

---

[2]Joe Kelly Butler, Inc., formerly conducted business under the name Butler Drilling Co.

The cost, expenses of sale, accumulated depreciation, and adjusted basis of each category of property sold was as follows:

|  | Cost | Expenses of sale | Accumulated depreciation | Adjusted basis as of 10/1/74 |
|---|---|---|---|---|
| Land | $14,676 | $46,450 | 0 | $14,676 |
| Building | 166,918 | 9,764 | $50,676 | 116,242 |
| Furniture and fixtures | 73,395 | 4,260 | 48,641 | 24,754 |
| Equipment | 26,904 | 708 | 24,214 | 2,690 |
| Rigs | 2,003,284 | 270,444 | 1,330,463 | 672,821 |
| Total | 2,285,177 | [1]331,626 | 1,453,994 | 831,183 |

[1]The parties stipulated that total selling expenses were $331,666. The figures provided for each category of selling expenses total $331,626. This discrepancy is immaterial to the resolution of the issue before us.

Petitioner elected to report the gain on the sale of the assets to Mitchell using the installment method. In the year of sale, petitioner recognized $27,155 as income from the sale of the real property. It is unclear exactly how petitioner calculated this amount but it is presumably some percentage of the cash received. It is clear, however, that petitioner did not treat the amount of the mortgage assumed by Mitchell in excess of the basis of the real property as a payment in the year of sale. In subsequent years, petitioner increased the gross profit percentage to an amount in excess of 100 percent in order to recognize as income the excess of the mortgage assumed over the basis of the real property.

The Commissioner, in his statutory notices of deficiency, determined that the portion of gain attributable to the sale of the real property did not qualify for reporting under the installment method because more than 30 percent of the purchase price was received in the year of sale. The Commissioner calculated the payments received by petitioner in the year of sale with respect to the real property as follows:

| | |
|---|---|
| Mortgage assumed | $796,907 |
| Less: Adjusted basis | [1]187,132 |
| Mortgage over adjusted basis | 609,775 |
| Cash received | 41,851 |
| Total payments | 651,626 |
| Total sale price | 1,746,907 |

Percentage of sale price received
    in year of sale............................    37%

[1]Respondent conceded on brief that selling expenses are to be added to the adjusted basis of the property.

If the mortgage assumed is compared to the aggregate basis of all the assets sold, there is no mortgage in excess of basis and the percentage of the purchase price received in the year of sale does not exceed 30 percent.

The statutory provisions permitting the installment method of reporting income were enacted because when sales are made on the installment basis, application of the cash or accrual basis of reporting creates a hardship. Payment of the entire tax on the profit may be required in a single year, even though the seller receives little or none of the selling price at that time. If the entire gain is taxed in that year, the seller might well be faced with a substantial tax without having a sufficient portion of the sales proceeds available to pay the tax. The installment reporting privilege is designed to alleviate this potential hardship by spreading the tax over the periods in which sales proceeds are received. *Burnet v. S. & L. Bldg. Corp.*, 288 U.S. 406, 413 (1933). The underlying concept is that the tax should be paid "from the proceeds collected rather than be advanced by the taxpayer." *Prendergast v. Commissioner*, 22 B.T.A. 1259, 1262 (1931). As the Supreme Court stated in *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496 (1948):

The installment basis of reporting was enacted, as shown by its history, to relieve taxpayers who adopted it from having to pay an income tax in the year of sale based on the full amount of anticipated profits when in fact they had received in cash only a small portion of the sales price. * * * [333 U.S. at 503.]

Section 453[3] provides, in part, that in the case of an

---

[3]During the taxable years in issue, sec. 453 provided as follows:

SEC. 453. INSTALLMENT METHOD.

  (a) DEALERS IN PERSONAL PROPERTY.—

    (1) IN GENERAL.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

         *      *      *      *      *      *      *

installment sale, income need not be reported until payments are "actually received." The amount to be reported in any one year is the proportion of the installment payments received that year, that the gross profit bears to the total contract price. With respect to sales of real property or casual sales of personal property, installment reporting is not available where the amount of all payments received in the year of sale exceeds 30 percent of the selling price.[4]

Section 1.453-4(c), Income Tax Regs., provides that where encumbered property is either sold subject to an existing mortgage, or the mortgage is assumed by the purchaser, the amount of the mortgage is not taken into account for the purpose of determining the amount of payments received by the seller nor for the purpose of determining the contract price.[5] However, to the extent that the mortgage exceeds the seller's basis in the property, the excess is considered as a payment received in the year of sale and is included in the contract price. Sec. 1.453-4(c), Income Tax Regs.

Respondent has determined that petitioner is not entitled to use the installment method to report the gain attribut-

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—
    (1) GENERAL RULE.—Income from—
        (A) a sale or other disposition of real property, or
        (B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000, may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).
    (2) LIMITATION.—Paragraph (1) shall apply—
        (A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition—
            (i) there are no payments, or
            (ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.

[4]The 30-percent limitation was eliminated by sec. 2(a) of the Installment Sales Revision Act of 1980, Pub. L. 96-471, 94 Stat. 2247.

[5]Sec. 1.453-4. Sale of real property involving deferred periodic payments.

(c) *Determination of "selling price"*. In the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, shall, for the purpose of determining whether a sale is on the installment plan, be included as a part of the "selling price"; and for the purpose of determining the payments and the total contract price as those terms are used in section 453, and sections 1.453-1 through 1.453-7, the amount of such mortgage shall be included only to the extent that it exceeds the basis of the property. The term "payments" does not include amounts received by the vendor in the year of sale from the disposition to a third person of notes given by the vendee as part of the purchase price which are due and payable in subsequent years. Commissions and other selling expenses paid or incurred by the vendor shall not reduce the amount of the payments, the total contract price, or the selling price.

able to the real property sold as part of the bulk sale of assets to Mitchell. To reach this conclusion, respondent argues that the assets sold must be divided into classes and the gain analyzed by class. Respondent then contends that the mortgage assumed in excess of the basis of the mortgaged property (the real property) is a payment in the year of sale with respect to the real property. As a result, petitioner received more than 30 percent of the sales price of the real property in the year of sale.

Petitioner argues that because the mortgage assumed does not exceed the basis of all the assets sold, there is not a payment in the year of sale attributable to a mortgage in excess of basis. Petitioner then argues that, as a result, less than 30 percent of the sales price was received in the year of sale and the gain attributable to the real property is eligible for reporting under the installment method.

Section 453 does not address how a bulk sale of assets is to be analyzed. Respondent, however, argues that the segregation of assets is required because the statute sets out different rules for different classes of assets. Respondent reasons that personal property and real property must be examined separately because personal property is subject to a $1,000 minimum sales price limitation. Sec. 453(b)(1)(B). However, absent any special allocation, the relevant percentage of initial payments to selling price is the same whether total initial payments are compared to the gross price or the initial payment attributable to each component is compared to an allocable portion of the gross price. In other words, if personal property and real property are sold as part of a bulk sale of assets and less than 30 percent of the total sales price is received in the year of sale, then absent any special allocation, less than 30 percent of the sales price allocable to each component (personal property and real property) will be received in the year of sale. Accordingly, we are not persuaded by respondent's argument that the statute requires the segregation of personal property and real property sold as part of a bulk sale of assets.

An examination of the history and purpose of section 1.453-4(c), Income Tax Regs., reveals that it was not designed primarily to govern year-of-sale payments but was

introduced for an entirely distinct technical purpose, and its effect on year-of-sale payments is merely an incidental by-product.

Prior to amendment in 1929, the predecessor of the current regulations under section 453 provided that:

> In the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, shall not be considered as a part of the "initial payments" or of the "total contract price," but shall be included as part of the "purchase price," * * * [Regs. 69, art. 44 (1926).]

The rationale behind this early regulation was explained by the Supreme Court in *Burnet v. S. & L. Bldg. Corp.*, 288 U.S. 406 (1933). The installment method of reporting requires a portion of every payment made by the buyer to be taxed as gain to the seller. If the buyer assumes a mortgage or other liability of the seller, in all cases in which the regulation does not apply, recognition of gain is spread over not only the payments made by the buyer to the seller but also over payments made by the buyer to creditors of the seller. Thus, each time the buyer makes a payment to a creditor of the seller, the seller must report some income. This application of the installment method results from including liabilities assumed in the "contract price." *Burnet v. S. & L. Bldg. Corp.*, *supra* at 412-414.

In order to eliminate the administrative inconvenience and practical difficulties of imposing and collecting a tax from the seller every time the buyer made a payment to the third-party mortgagee, the original version of Regs. 69, art. 44 (1926), defined "contract price" as not including the amount of an assumed mortgage. The regulation, therefore, has the effect of raising the gross profit percentage,[6] thus permitting recognition of all of the gain solely upon payments made directly to the seller. *Burnet v. S. & L. Bldg. Corp.*, *supra* at 412-414.

The regulation was amended in 1929 to provide that mortgages assumed, to the extent they exceed the basis of the seller in the property, were to be included in both "contract price" and "initial payments." The amended

---

[6] Gross profit percentage $= \dfrac{\text{Gross profit}}{\text{Contract price}}$

regulation, which is in essence the same as the current regulation, represented a compromise between two conflicting policy considerations. In cases in which the property was sold subject to a mortgage that exceeded the basis of the property, the gross profit percentage calculated according to the regulation prior to amendment would be greater than 100 percent. In such a situation, the total gain on the transaction would be greater than the total direct payments ultimately to be received by the seller. If the total gain is to be recognized and taxed only as payments are received by the seller, the gross profit percentage must be greater than 100 percent.

Rather than impose a tax on a gain of greater than 100 percent of payments received, the regulation requires the "contract price" to include the excess of the mortgages assumed over the seller's basis, thus producing a gross profit percentage of 100. However, if some portion of the mortgage assumed is to be included in the "contract price," then there would still exist the administrative problem of taxing gain to the seller as payments are made by the buyer to the third-party mortgagee. The regulation eliminates this problem by including the mortgage assumed, to the extent it is included in the "contract price," in the "initial payments." This triggers, in the year of sale, recognition of the entire amount of gain in excess of cash to be ultimately received. By recognizing gain in the year of sale to the extent necessary, the administrative problem of recognition of gain upon payments by the buyer to the mortgagee is eliminated, and the gross profit percentage applicable to cash eventually received by the seller is equal to 100 percent.

The inclusion of the mortgage in excess of basis as a payment received in the year of sale is intended to address a particular situation. Hence, we view the underlying purpose of the regulation to suggest that it should be read narrowly and applied sparingly. Therefore, we will not apply the regulation in a manner that results in the unintended side effect of increasing year-of-sale payments and thereby disqualifying a transaction under the 30-percent test.

We have also examined the cases cited by respondent as authority for the proposition that a bulk sale of assets must

be treated for installment sale purposes as a sale of the separate classes of assets. *Bostedt v. Commissioner*, 70 T.C. 487 (1978); *Monaghan v. Commissioner*, 40 T.C. 680 (1963). Based upon our analysis, we conclude that these cases are distinguishable.

. *Monaghan v. Commissioner, supra*, involved the sale of the assets of a liquor business. The sales agreement did not allocate prices to the assets sold, but provided a total purchase price for the business. An additional agreement was executed that stated the purchase price of the inventory. Respondent argued that the facts indicated a sale of the entire business and that the sale could not be fragmentized. We held that since the inventory was specifically excluded by the statute from the privilege of installment reporting, the proceeds attributable to the inventory were excluded from the 30-percent limitation test. *Monaghan v. Commissioner, supra* at 687. Since we only required segregation of the inventory, which is specifically excluded from the installment reporting provisions, this case does not support respondent's argument that a bulk sale of assets must be treated for installment sale purposes as a sale of the separate classes of assets.

In *Bostedt v. Commissioner, supra*, we dealt with the proper application of the installment method to report gain on the sale of a motel. The issue was whether a purchaser's payment of the seller's commission expenses as part of the bargained for exchange constituted payment in the year of sale. We held that it did and, as a result, the seller received more than 30 percent of the sales price in the year of sale and was not entitled to report the gain under the installment method. *Bostedt v. Commissioner, supra* at 492. The assets sold consisted of personal property, goodwill, real property, and improvements. The Court stated in a footnote that the personal property was sold at a loss and since section 453 is not applicable to property sold at a loss, the personal property was segregated from the remaining assets. *Bostedt v. Commissioner, supra* at 489 n. 2. However, in calculating the amount of the payment attributable to mortgages in excess of basis, the mortgages assumed were

compared to the adjusted basis of all the remaining assets.[7] The mortgages in excess of basis plus the cash received in the year of sale allocable to the remaining assets were then compared to the sales price allocable to the remaining assets to determine if payments in the year of sale exceeded 30 percent of the selling price. We classified the various assets only to the extent of the personal property sold at a loss. Accordingly, this case does not stand for the general proposition that a bulk sale of assets must be treated for installment sale purposes as a sale of the separate classes of assets.

In addition, the cases holding that the sale of a going business operated as a proprietorship is to be considered a sale of the separate business assets for purposes of ascertaining whether profit results in capital gain or ordinary income are not persuasive. *Watson v. Commissioner*, 345 U.S. 544 (1953); *Williams v. McGowan*, 152 F.2d 570 (2d Cir. 1945). The installment provisions do not govern the characterization of gain. They are timing provisions that simply determine the taxable year in which income from an installment sale is to be recognized. The considerations present in allocating gain between capital gain and ordinary income are not controlling for purposes of determining when income is to be recognized.

On the stipulated record here we are presented with a factual situation in which petitioner sold various assets to Mitchell. There was one sales agreement covering all of the assets sold. The total consideration of $6,401,345 consisted of $246,900 in cash, a promissory note in the principal amount of $5,357,538, and an assumption of the promissory note of petitioner payable to Great Commonwealth Life Insurance Co. in the amount of $796,907. The sales agreement does not allocate the consideration to the various assets sold. The note assumed was merely a component of the total consideration. The sales agreement does not indicate that the note assumed was part of the consideration for the real property only. Therefore, we conclude that there is no reason to examine the real property separately

---

[7]The remaining assets consisted of land, improvements, and goodwill. The basis of the goodwill was zero, but the selling expenses attributable to the goodwill were included in the adjusted basis.

and treat the mortgage assumed as consideration solely attributable to the real property. There is simply no warrant for such fragmentation.

Our analysis would not be complete without an examination of the case law of the U.S. Court of Appeals for the Fifth Circuit (the court to which this decision is appealable). Of particular importance is *Irwin v. Commissioner*, 390 F.2d 91 (5th Cir. 1968), revg. and remanding 45 T.C. 544 (1966). While the holding of that case is not controlling and we are not applying our rule in *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971), the reasoning of the Fifth Circuit is instructive with regard to the resolution of the issue presently before us.

*Irwin v. Commissioner, supra*, dealt with the sale of an insurance business, operated as a partnership. The seller's adjusted basis in the assets was $349,189.86. The purchasers paid $81,539.64 in cash at closing and delivered promissory notes to the sellers in the amount of $390,000. No payments were made on the promissory notes in the year of sale. In addition, the purchasers assumed the partnership business liabilities of $271,186.95 consisting of insurance premium notes payable, accounts payable to insurance companies, payroll taxes, various automobile notes, and other accounts payable. No part of these liabilities was due purchasers. During the year of sale, the purchasers paid a total of $237,974.05 on these liabilities in the regular course of business. We concluded that the payment of these business liabilities by the purchasers was part of the payment received by the sellers in the year of sale within the meaning of section 453(b)(2)(A). As a result, the sellers received more than 30 percent of the selling price during the year of sale and were not entitled to report their gain from the sale on the installment basis. *Irwin v. Commissioner*, 45 T.C. at 554.

On appeal, the Fifth Circuit held that these current liabilities, although assumed and paid, were not payments in the year of sale. To reach its conclusion, the Fifth Circuit applied section 1.453-4(c), Income Tax Regs., to nonmortgage liabilities. *Irwin v. Commissioner*, 390 F.2d at 96. Since the liabilities assumed ($271,186.95) were not in excess of

the basis of the assets sold ($349,189.86) no part of the liabilities, although assumed and paid, was includable as a payment in the year of sale.

The Fifth Circuit compared the liabilities to the basis of all the assets sold to determine if there was a payment in the year of sale attributable to liabilities in excess of basis. We do not think it would analyze the situation differently if, as in the instant case, there was a mortgage that is secured by a portion of the assets sold. This transaction involves a bulk sale of 'assets covered by one sales agreement and the note assumed was merely a component of the total consideration.

In footnote 2 of its opinion, the Court of Appeals commented upon fragmenting the sale as follows:

> Taxpayers assert an additional theory for reversal. They would fragment the sales price into payment for good will on the one hand and payment for assets on the other and thus avoid the thirty per cent stricture. The government contends that this theory was withdrawn in the Tax Court and thus not considered there. In the view we take of the case we might forego decision on this theory but we think it warrants the statement, aside from the procedural bar asserted by the government, cf. *Helvering v. Wood*, 1940, 309 U.S. 344, 348-349, 60 S.Ct. 551, 84 L.Ed. 796; *General Utilities & Operating Co. v. Helvering*, 1935, 296 U.S. 200, 206, 56 S.Ct. 185, 80 L.Ed. 154, that there is no warrant whatever for such fragmentation. There was one sale for one price and it would be exalting form over substance to sustain such a fragmentation approach. Cf. *Commissioner of Internal Revenue v. Court Holding Company*, 1945, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; *Reef Corporation v. Commissioner of Internal Revenue*, 5 Cir., 1966, 368 F.2d 125, 130; *General Guaranty Mortgage Company v. Tomlinson*, 5 Cir., 1964, 335 F.2d 518, 520; *Hindes v. United States*, 5 Cir., 1964, 326 F.2d 150, 151. [*Irwin v. Commissioner*, 390 F.2d at 93 n. 2.]

Accordingly, it is our conclusion that the Fifth Circuit would compare the mortgage assumed to the basis of all the assets sold to determine if there was a payment in the year of sale attributable to a mortgage in excess of basis.

Therefore, we hold that, on the facts of this case, petitioner received a payment in the year of sale attributable to a mortgage assumed in excess of basis only to the extent that the mortgage assumed exceeds the basis of all the assets sold. Since the mortgage assumed was $796,907 and the basis of all the assets sold was $831,183, we conclude that there was no mortgage in excess of basis.

Accordingly, petitioner is entitled to report the gain attributable to the real property under the installment method.[8] Furthermore, as a result of our refusal to segregate the assets there will be a single gross profit percentage for the entire sale.

To reflect concessions and the foregoing,

*Decisions will be entered under Rule 155.*

---

[8]In view of our resolution of the issue, we need not comment upon the other arguments of petitioner.