418 F.2d 1084
 70-1 USTC P 9104
 BANKERS GUARANTEE TITLE & TRUST COMPANY, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant.
BANKERS GUARANTEE TITLE & TRUST COMPANY, Plaintiff-Cross-Appellee,
v.
UNITED STATES of America, Defendant-Cross-Appellant.
 Nos. 19229, 19230.
 United States Court of Appeals Sixth Circuit.
 Nov. 28, 1969.
 
 David H. Wilson, Akron, Ohio, for Bankers Guarantee Title & Trust; Norman S. Carr, Brouse, McDowell, May & Birece, Akron, Ohio, on brief.
 William L. Goldman, Atty., Dept. of Justice, Washington, D.C., for the United States; Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Thomas L. Stapleton, Attys., Dept. of Justice, Washington, D.C., on brief; Bernard J. Stuplinski, U.S. Atty., Carl H. Miller, Asst. U.S. Atty., Cleveland, Ohio, of counsel.
 Before WEICK and PECK, Circuit Judges, and MACHROWICZ,[1] District judge.
 PER CURIAM.
 
 
 1
 This is an action for refund of income taxes paid by plaintiff Bankers Title and Trust Company. Bankers is engaged in the mortgage banking business in Akron, Ohio. As a mortgage banker it institutes mortgage loans and sells the mortgages to institutional investors. For this service it receives a discount fee from the investor and an origination fee from the borrower for the generation of the mortgage loan. Bankers also services mortgages after they have been sold to the investor. Servicing consists of collecting payments from the borrower, inspecting the mortgaged premises, and paying insurance and taxes.
 
 
 2
 Metropolitan Life Insurance Company was one of the investors for whom Bankers originated and serviced mortgages. In 1945 Bankers and Metropolitan entered into a written mortgage correspondency agreement which authorized Bankers to originate and service mortgages in the Akron, Ohio area for Metropolitan. The agreement did not obligate Metropolitan to purchase any particular mortgage from Bankers or to keep Bankers as its servicing agent with regard to any mortgages purchased by Metropolitan. The agreement stated that it could be cancelled at will by either party.
 
 
 3
 In 1962 Bankers commenced negotiations with The Kissel Company, another mortgage banker, for the sale to Kissel of the Metropolitan mortgage portfolio then being serviced by Bankers. Ultimately, on March 5, 1963, Kissel and Bankers executed a letter agreement which provided that,
 
 
 4
 'After the close of business hours on March 22, 1963, Kissel will purchase and Bankers will sell all the rights, title, obligation and benefits pertaining to the mortgage servicing business presently carried on by Bankers for Metropolitan Life Insurance Company.'
 
 
 5
 The purchase price of the Metropolitan mortgage servicing business was set at $497,000.
 
 
 6
 Bankers, the Taxpayer, treated the entire proceeds from the sale as capital gain. The District Director determined that the entire proceeds were ordinary income, and assessed additional taxes against Bankers, which paid the additional assessment, claimed a refund, which was disallowed, and then instituted this suit.
 
 
 7
 The Trial Judge held that of the total sales price, $362,236 was to be taxed as ordinary income and $134,764 was to be taxed as capital gain. On appeal Bankers argues that the entire sales price proceeds should have been taxed at capital gains rates, and the Government argues that the entire amount should have been taxed as ordinary income. Alternatively, the Government argues that even if an allocation between ordinary income and capital gain is permissible, the District Court effected that allocation in a legally impermissible manner.
 
 
 8
 Considering the ordinary income question first, it seems clear that the District Court relied principally on that line of cases from the Fifth Circuit which had previously considered this same problem. Nelson Weaver Realty Company v. C.I.R., 307 F.2d 897 (5th Cir. 1962); Bisbee-Baldwin Corporation v. Tomlinson, 320 F.2d 929 (5th Cir. 1963); General Guaranty Mortgage Co. v. Tomlinson, 335 F.2d 518 (5th Cir. 1964). Bankers attempts to distinguish the holding in Bisbee-Baldwin, the principal case in the series, by arguing that in Bisbee-Baldwin, as well as in other cases holding that sale receipts constitute ordinary income as received in substitution of future ordinary income, the taxpayer had a legally enforceable right, whereas here there was no such right because of the right of either party to cancel the agreement. This court concludes however, that the District Judge was correct in relying on and following Bisbee-Baldwin. The fact situation and the rights and obligations of the parties therein were virtually identical to the case now being considered, and in that case, like this one, there was a right to cancel the agreement enjoyed by both sides. In following the rationale of Bisbee-Baldwin, the Trial Judge was correct in concluding that at least a portion of the sales price constituted a substitute for income which would have been earned and received by Bankers, and was therefore taxable at ordinary income rates.
 
 
 9
 With respect to that portion of the decree which held that $134,764 was paid for 'goodwill', this court concludes that the Trial Judge was also correct in relying on Bisbee-Baldwin. That case, as well as the Guaranty Mortgage case, supra, approves the procedure of allowing the District Judge to receive evidence on the question of whether or not part of the sale proceeds constituted payment for 'goodwill'. As in Bisbee-Baldwin, there was considerable evidence in this case to suggest that Bankers sold not only the right to receive future income but also a number of business advantages which were concomitant to the mortgage servicing agreement.
 
 
 10
 Appellee attacks the allocation of the sales proceeds as determined by the District Court. This court cannot say, from an examination of the transcript and briefs, that the Trial Judge was remiss in allocating the proceeds as he did. The record reveals that the District Judge received testimony and exhibits from Bankers, from the Government and from The Kissel Company, on the question of the amount of income which Bankers could reasonably have expected to receive from servicing the Metropolitan portfolio. It likewise received testimony from the interested parties on the question of the value of any 'goodwill' sold by Bankers. The court specifically found that there was value attributable to the relationship between Bankers, Metropolitan and the mortgagors. Additionally, the court found that Bankers had lost the right to utilize the mortgagors' monthly escrow deposits to enhance its credit standing, and the 'feeder' dimension of the Metropolitan account. This court cannot say that the District Judge, after hearing and sifting the evidence presented by the interested parties, was incorrect in his conclusion as to either the amount of income received in anticipation of future ordinary income or in the value of the 'goodwill' transferred by the sale. As Judge Friendly observed in C.I.R. v. Ferrer, 304 F.2d 125, 135 (2d Cir. 1962),
 
 
 11
 'In such instances, where part of a transaction calls for one tax treatment and another for a different kind, allocation is demanded * * *. If it be said that to remand for this purpose is asking the Tax Court to separate the inseparable, we answer that no one expects scientific exactness; that however roughly hewn the decision may be, the result is certain to be fairer than either extreme.'
 
 
 12
 Affirmed.
 
 
 
 [1]
 Honorable Thaddeus M. Machrowicz, Judge of the United States District Court for the Eastern District of Michigan, sitting by designation