RASHTI CONSTRUCTION COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; AARON ASHTI AND RUTH K. RASHTI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Rashti Constr. Co. v. Commissioner
Docket Nos. 30703-83; 30704-83.
United States Tax Court
T.C. Memo 1988-140; 1988 Tax Ct. Memo LEXIS 168; 55 T.C.M. (CCH) 524; T.C.M. (RIA) 88140; March 31, 1988; As amended April 7, 1988 Lynn Ross, Jr. for petitioners. John S. Repsis, for respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In these cases, which have been consolidated for trial, briefing and opinion, respondent determined deficiencies in petitioners' Federal income tax as follows: *171 RASHTI CONSTRUCTION COMPANY, INC.
Year Ending
Deficiency
July 31, 1976
$ 49,980.00
July 31, 1977
63,007.00
July 31, 1978
96,941.64
July 31, 1979
84,659.67
July 31, 1980
110,858.00
July 31, 1981
169,453.00
AARON RASHTI AND RUTH K. RASHTI
Year
Deficiency
1978
$ 86,154.00
After concessions the issues remaining for decision are (1) whether petitioners, Rashti Construction Company, Inc. and Aaron Rashti, partners in a limited partnership, realized gains in the amounts determined by respondent when they sold their interests in the partnership; (2) whether petitioners Aaron Rashti and Ruth K. Rashti are entitled to report their gain by the installment sale method; and (3) whether petitioner Rashti Construction Company, Inc. is entitled to report its gain by the installament sale method. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. Petitioner Rashti Construction Company, Inc. ("R.C.C."), formerly known as South Gate Apartments, Inc. ("South Gate") had its principal place of business in Texas *172 at the time it filed its petition. Petitioners Aaron Rashti and Ruth K. Rashti, husband and wife, resided in Texas at the time they filed their petition. All petitioners use the cash basis method of accounting. From August 1, 1975 through July 31, 1981 R.C.C.'s outstanding capital stock was owned as follows: Years Ending
July 31, 1976
Years Ending
Through
July 31, 1980
July 31, 1979
and 1981
Aaron Rashti
80%
97%
Edward Rashti
6%
1%
Robert Rashti
7%
1%
Jeanette Rashti
7%
1%
During such period Aaron Rashti ("Rashti") was president of R.C.C., which was principally engaged in the construction of residential apartments and commercial buildings. As of December 31, 1977, Rashti as a general partner and R.C.C. as a limited partner owned 40 percent and 60 percent, respectively, of the capital and profits of Miller Apartments, Ltd., ("Miller Apartments"), a Texas limited partnership, which was formerly known as South Gate Apartments and which had been principally engaged in owning and operating residential apartments since its organization in 1966. Rashti's basis in his partnership interest was $ 248,876 and R.C.C.'s basis *173 in its partnership interest was $ 613,003. The condensed balance sheet of Miller Apartments at December 31, 1977, as set out in its partnership return for 1977, reflected assets, liabilities and capital as follows: Assets
Cash
$  17,529.98
Other current assets
28,197.87
Building and other fixed
$ 1,366,859.35
depreciable assets
Less: accumulated depreciation
617,294.81
749,564.54
Land
94,021.94
Total assets
$ 889,314.33
Liabilities and Capital
Mortgages, notes, and bonds payable
in 1 year or more
$ 1,166,868.69 Other current liabilities
17,657.78 Partners' capital accounts
(295,212.14)
Total liabilities and capital
$   889,314.33 In his notices of deficiency, respondent determined that on December 31, 1977, the partnership's liabilities were as follows: Accounts payable
$    11,570
Non-recourse mortgage
1,166,868
Total liabilities
$ 1,178,438
The record contains no explanation for the difference between the amount labeled "accounts payable" by respondent and the amount shown as "other current liabilities" *174 on the balance sheet. Petitioners, however, do not contest respondent's determination of the liabilities and consequently hereinafter the accounts payable will be reflected as $ 11,570 and the total liabilities will be reflected as being $ 1,178,438. Of the negative capital accounts totaling $ 295,212.14 shown on the balance sheet, the parties have stipulated that $ 185,917 belonged to Rashti and $ 104,140 belonged to R.C.C. [1]
On January 1, 1978, Rashti and R.C.C. entered into an agreement with Stanley Hickman ("Hickman"), an unrelated third party, under which they agreed in effect to retain 1 percent of their respective interests in Miller Apartments and to sell the other 98 percent interest in the partnership (39 percent by Rashti and 59 percent by R.C.C.) to Hickman. It was also agreed that after the sale, the partnership interests were to be held as follows: Partner
Partnership Interest
Rashti
1% as general partner
R.C.C.
1% as limited partner
Hickman
97% as limited partner and
1% as general partner
*175 The sale agreement between petitioners and Hickman provided in part as follows: All the assets of the old Partnership, subject to all of its liabilities, shall on the effective date herein be transferred to the new Partnership. The new Partnership shall take such assets subject to all the liabilities of the old Partnership . . . South Gate [R.C.C.] and Aaron Rashti warrant and represent that from and out of the payments on said aforedescribed Notes, each will from and out of said annual payments apply so much thereof as is necessary to retire the deficits in the capital account, during the period said Note will be retired in full. In this connection it is further understood and agreed by all the parties that the deferred notes shall bear interest, other than as previously provided, only in the event it becomes necessary for South Gate and Aaron Rashti to pay interest to the Partnership represented by such capital deficit and if interest thereon is charged to South Gate and Aaron Rashti, then and in such event, Hickman herein will be required to pay South Gate and Aaron Rashti interest on Hickman's Notes executed in part payment of the purchase price of said Partnership interest *176 in an amount sufficient to off-set the interests South Gate and Aaron Rashti may be required to pay to the Partnership. Pursuant to the agreement, Rashti received in January 1978 from Hickman for the sale of part of his general partnership interest $ 10,000 in cash and a $ 205,917 promissory note secured by Hickman's partnership interest. The note was payable in nine installments. The first two installments, each in the principal amount of $ 10,000 and being with recourse and bearing interest at 7 percent per annum, were due on January 1, 1979 and January 1, 1980 in the amounts of $ 11,400 and $ 10,700, including interest of $ 1,400 and $ 700, respectively. The balance of the note, or $ 185,917, was equal to the negative balance in Rashti's capital account and was payable without recourse or interest [2] in six equal annual installments of $ 26,559.50 beginning on January 1, 1981, plus one installment of $ 26,559.00 on January 1, 1987. *177 Pursuant to the agreement, R.C.C. received in January 1978 from Hickman for the sale of part of its limited partnership interest, $ 15,000 in cash and a $ 134,140 promissory note secured by Hickman's partnership interest. This note was also payable in nine installments. The first two installments, each in the principal amount of $ 15,000 and being with recourse and bearing interest at 7 percent per annum, were payable on January 1, 1979 and January 1, 1980 in the amounts of $ 17,100 and $ 16,050, including interest of $ 2,100 and $ 1,050. The balance of the note, or $ 104,140, was equal to the negative balance in R.C.C.'s capital account and was payable without recourse or interest [3] in seven equal annual installments in the amount of $ 14,877.14 beginning on January 1, 1981. Hickman made the first two installments due on the notes payable to Rashti and R.C.C. on January 1, 1979 and January 1, 1980. Thereafter he sold part of his interest in the partnership to Spencer Lengyel; and still later, Hickman and Lengyel sold their aggregate partnership *178 interests to Mason, Bauer & Goodman, an unrelated partnership. Both sales were made subject to the "prior rights" of Rashti and R.C.C. under their agreement with Hickman. In a letter dated January 5, 1981, Mason, Bauer & Goodman, the then managing general partner of Miller Apartments, advised Rashti as follows: We have, effective January 1, 1981 made the following book entries on the partnership books: . . . We have reduced the note from Aaron Rashti to Miller Apartments, Ltd. in the amount of $ 26,559.57. Additional[ly] we have reduced the Capital Account of the Goodman Group/Miller Apartments in the amount of the (above payment). This is the same approach we will continue to use until the notes are paid in full. By letter bearing the same date, January 5, 1981, Mason, Bauer & Goodman advised R.C.C. as follows: We have, effective January 1, 1981 made the following book entries on the partnership books: . . . We have reduced the note from Rashti Construction Company, Inc. to Miller Apartments, Ltd., in the amount of $ 14,877.14. Additional[ly] we have reduced the Capital Account of the Goodman Group/Miller Apartments in the amount of the (above payment). This is the *179 same approach we will continue to use until the notes are paid in full." Rashti reported a long-term gain of $ 9,921 from the sale of his interest in Miller Apartments on his joint return for 1978. On its income tax returns for the fiscal years 1978, 1979 and 1980, R.C.C. treated its gain as being from an installment sale and reported long-term capital gains in the respective amounts of $ 0, $ 28,006 and $ 14,003. Deficiency notices were mailed by respondent to Rashti and R.C.C. on July 27, 1983 in which their gains from the sale to Hickman were recomputed. With respect to Rashti, respondent determined that the sale of his interest in the partnership resulted in a long-term capital gain of $ 227,112 in 1978 rather than the $ 9,921.00 shown on the 1978 return because in computing the total amount realized from the sale the reduction in Rashti's share of the partnership liabilities was deemed by respondent to be a distribution of money. For the same reason, respondent determined that the sale of R.C.C.'s interest in the partnership resulted in a total long term capital gain of $ 137,668. Respondent computed Rashti's gain as follows: COMPUTATION OF TOTAL AMOUNT REALIZED BY *180 RASHTI ON SALE
Relief of partnership liabilities: >100> >101> Total
Partnership
Rashti's Share
Liabilities
Before Sale 40%)
Accounts
Payable
$    11,570.00
$   4,628.00
Non-recourse
Mortgage
1,166,868.00
466,747.00
Totals
$ 1,178,438.00
$ 471,375.00
Cash Distribution Realized:
Cash
Relief of Liabilities
Deemed Cash Distribution
Rashti's Share
Relief of
After Sale 1%)
Liabilities
Accounts
Payable
$    116.00
$ 4,512.00
Non-recourse
Mortgage
11,668.00
455,079.00
Totals
$ 11,784.00
$ 459,591.00
Cash Distribution Realized:
Cash
$     175.00
Relief of Liabilities
459,591.00
Deemed Cash Distribution
$ 459,766.00
TOTAL AMOUNT REALIZED BY RASHTI
Deemed Cash Distribution
$ 459,766.00
Cash
10,000.00
Promissory Note
20,000.00
Total Amount Realized
$ 489,766.00
COMPUTATION OF RASHTI'S ADJUSTED BASIS
Deficit in partnership capital account as of 1-1-69
$ <121,054.00>
Plus: Prior audit adjustment 1967 and 1968)
22,579.00 Corrected capital account balance as of 1-1-69
<  98,475.00>
Less: Ordinary losses (1969 through 1977)
<  94,583.00>
Withdrawals (1969 through 1977)
<  43,323.00>
Plus: Other income (1969 through 1977)
25.00 Prior audit adjustment (1970 through 1971)
13,857.00 Corrected capital account balance as of 1-1-78
<222,499.00>
Plus: Share of partnership's liabilities
471,375.00 Adjusted basis of 40% of partnership capital and profits
248,876.00 Portion of your interest sold 39% of 40%
x         .975
Adjusted basis of partnership interest sold 1-1-78
$  242,654.00 Total Amount Realized
$  489,766.00 Less: Adjusted Basis
<242,654.00>
Gain Recognized by Rashti
$  247,112.00 *181 COMPUTATION OF GROSS PROFIT PERCENTAGE
FOR PURPOSES OF INSTALLMENT SALE
Selling Price:
Cash
$   10,000.00 Note (Constructively Received)
20,000.00 Deemed Cash Distribution
459,765.00 Total Selling Price
489,765.00 Times Limitation Percentage
.30%
Minimum payments in year of sale
$  146,929.00 Payments received in year of sale:
Cash
$   10,175.00 Relief of liabilities
459,591.00 Less: Adjusted Basis
<242,654.00>
Total payments made in year of sale
* $  227,112.00 Short-Term Capital Loss (as previously shown)
$ <  5,000.00>
Long-Term Capital Gain (as previously shown)
3,089.72 Long-Term Capital Gain (as previously shown)
507.65 Long-Term Capital Gain (as corrected above)
$  247,112.00 Net Long-Term Capital Gain
245,709.37 Less: Section 1202 Deduction
<122,854.68>
Your corrected taxable portion long-term capital gain
$  122,854.68 Less: Taxable long-term capital gain previously reported
<  4,259.37>
Increase to Taxable Income
$  118,595.31 *182 Respondent also determined that Rashti's sale did not qualify for installment reporting because the payments received or deemed received by him in the year of sale exceeded the 30 percent limitation then in effect under section 453; [4] and that his promissory note was constructively received in the year of sale to the extent of the first two payments or $ 20,000. With respect to R.C.C., respondent conceded that the sale of its partnership interest qualified for installment reporting but determined that the sale resulted in a long-term capital gain to R.C.C. of $ 137,668 with recognition of $ 92,668 in fiscal year 1978, $ 30,000 in fiscal year 1979, and $ 15,000 in fiscal year 1980. Respondent's computation with respect to R.C.C. is as follows: COMPUTATION OF TOTAL AMOUNT REALIZED ON SALE Relief of Partnership Liabilities: >100> >101> Total
Partnership
RCC's Share
Liabilities
Before Sale (60%)
Accounts Payable
$    11,570.00
$   6,942.00
Non-recourse Mortgage
1,166,868.00
700,121.00
Total
$ 1,178,438.00
$ 707,063.00
Cash Distribution Realized:
Cash
Relief of Liabilities
Deemed Cash Distribution
*183 RCC's Share
Relief of
After Sale (1%)
Liabilities
Accounts Payable
$    116.00
$   6,826.00
Non-recourse Mortgage
11,668.00
688,455.00
Total
$ 11,784.00
$ 695,279.00
Cash Distribution Realized:
Cash
$     175.00
Relief of Liabilities
695,279.00
Deemed Cash Distribution
$ 695,454.00
TOTAL AMOUNT REALIZED
Deemed Cash Distribution
$ 695,454.00
Cash
15,000.00
Promissory Note
30,000.00
Total Amount Realized
$ 740,454.00
COMPUTATION OF RCC'S ADJUSTED BASIS
Deficit in partnership capital account as of 1-1-69
$ <37,812.00> Plus: Prior audit adjustment (1967 and 1968)
11,290.00  Corrected capital account Balance as of 1-1-69
<26,522.00> Less: Ordinary losses (1969 through 1977)
<44,015.00> Withdrawals (1969 through 1977)
<30,464.00> Plus: Other income (1969 through 1977)
12.00  Prior audit adjustment (1970 through 1971)
6,929.00  Corrected capital account balance as of 1-1-78
<94,060.00> Plus: share of partnership's liabilities
707,063.00  Adjusted basis of 60% of partnership capital and profits
613,003.00  Portion of interest sold 59% of 60%
.9833
Adjusted basis of partnership interest sold 1-1-78
602,786.00  Total Amount Realized
$ 740,454.00  Less: Adjusted Basis
<602,786.00> Gain Recognized
$ 137,668.00  *184 COMPUTATION OF GROSS PROFIT PERCENTAGE
FOR PURPOSES OF INSTALLMENT SALE
Selling Price:
Cash
$  15,000.00 Note
30,000.00 Deemed Cash Distribution
695,454.00 Total Selling Price
$ 740,454.00 Times Limitation Percentage
30%
Minimum payments in year of sale
$ 222,136.00 Payments made in year of sale:
Cash
$     175,00 Relief of liabilities
695,275.00 Less: Adjusted basis
<602,786.00>
Total payments made in year of the sale
$  92,668.00 Contract Price:
Cash
$ 15,175.00 Note
30,000.00 Relief of Liabilities
695,279.00 Less: Adjusted Basis
<602,786.00>
Contract Price
$ 137,668.00 Gross Profit Percentage: Profit on Sale
$ 137,668.00
Contract Price
-
$ 137,668.00
-
100%
Therefore, the amount of gain to be recognized by RRC in each year is 100 percent of the deemed cash distribution and or payments received during the taxable year as shown below: Fiscal Year
7-31-78
7-31-79
7-31-80
Deemed Cash distribution
$ 92,668.00
$ 30,000.00
$ 15,000.00
Payments Received
0
0
0
Gross Profit Received
$ 92,668.00
$ 30,000.00
$ 15,000.00
*185 OPINION Under section 741 the sale or exchange of an interest in a partnership is treated as the sale or exchange of a capital asset. [5] The gain or loss of a partner on the sale of a partnership interest is the difference between the amount realized [6] and the adjusted basis of the partner in the partnership interest. Section 1.741-1(a), Income Tax Regs. The parties have stipulated that Rashti's basis was $ 242,654 and R.C.C.'s basis was $ 602,786. [7] Therefore, to determine their gain, we must determine the amount realized by each of them from the sale of their partnership interest. *186 Respondent determined, and petitioners do not contend to the contrary, that $ 1,166,868 of the partnership's total liabilities of $ 1,178,438 were represented by a nonrecourse mortgage. Consequently, prior to the sale, Rashti and R.C.C. shared in the nonrecourse liability of the partnership in the same proportion as they shared in the partnership's profits. Sec. 752(c); sec. 1.752-1(e), Income Tax Regs.; [8]Elrod v. Commissioner,87 T.C. 1046, 1082 (1986). As a result of the sale, Rashti's share of the partnership liabilities *187 was decreased from 40 percent to 1 percent and R.C.C.'s share was decreased from 60 percent to 1 percent. Respondent contends that by these decreases, Rashti and R.C.C. are deemed to have received under section 752(b) and section 1.752-1(d), Income Tax Regs, a distribution of money from the partnership in the amount of their respective decrease, or $ 459,591 and $ 695,279. Furthermore, respondent continues, under section 731(a)(1), the deemed distributions to Rashti and R.C.C. result in a gain to each of them to the extent their deemed distribution plus their actual distributions ($ 175 to each plus their initial cash payments and promissory notes totalling $ 30,000 [9] for Rashti and $ 45,000 [10] for R.C.C.), exceed their respective basis in their partnership interests of $ 242,654 for Rashti and $ 602,786 for R.C.C… Respondent concedes that under sections 741, 1221 and 1222 the excess of these totals over the basis of $ 247,112 for Rashti and $ 137,668 for R.C.C., are long-term capital gains. Petitioners contend that respondent's *188 computations as outlined above are incorrect because they were never relieved of their obligations to repay the negative capital accounts. Therefore, they argue, both the gains realized and the gains recognized by them should be reduced by their deficit capital accounts. In reply, respondent claims that petitioners' obligations to repay their capital accounts lack economic substance because such obligations were exactly offset by a portion of the selling price, i.e., the last seven installments on each of Hickman's notes and, therefore, in determining the total amount realized from the sale, the total selling price, and the payments received in the year of sale both petitioners' obligations to repay the deficit capital accounts and the last seven installments on Hickman's notes should be ignored. Under the circumstances set out in our findings, we agree that the purported obligations of petitioners to repay their deficit capital accounts lacked economic substance. This conclusion is supported not only by the fact that there was an exact offset in the amounts as well as the dates of payment of both principal and interest due on the last seven note installments with the repayment *189 of the deficit accounts. It is also noted that while notes receivable in the amount of the deficit accounts were placed on the books of Miller Apartments no notes for the amount of the deficits were ever actually executed by petitioners. Moreover, the record contains no evidence that any actual payment was ever made on the last seven note installments or on the deficit accounts. In fact, from the record it is apparent that the last seven note installments as well as the corresponding amounts due on the deficit accounts were handled by Miller Apartments by offsetting book entries. We conclude, therefore, that the negative balances in the capital accounts as well as the last seven installments due on Hickman's notes should be ignored and that respondent's determination in this respect is correct. Rashti claims that he is entitled to report his gain under the installment method provided by section 453. [11] Respondent, however, contends that Rashti's sale does not qualify for installment reporting because under section 453 and section 1.453-4(c), Income Tax Regs., the amounts received or deemed to have been received by Rashti in the year of the sale, exceeded *190 30 percent of the total selling price. [12]
*191 Section 1.453-4(c), Income Tax Regs., as in effect in 1978, in pertinent part read as follows: Determination of "selling price." In the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser, shall, for the purpose of determining whether a sale is on the installment plan, be included as a part of the "selling price"; and for the purpose of determining the payments and the total contract price as those terms are used in section 453, and sections 1.453-1 through 1.453-7, the amount of such mortgage shall be included only to the extent that it exceeds the basis of the property. The term "payments" does not include amounts received by the vendor in the year of sale from the disposition to a third person of notes given by the vendee as part of the purchase price which are due and payable in subsequent years. Commissions and other selling expenses paid or incurred by the vendor shall not reduce the amount of the payments, the total contract *192 price, or the selling price. [Emphasis added.] We have found that as of the date of the sale of Rashti's partnership interest, the partnership's liabilities included a nonrecourse mortgage in the amount of $ 1,166,868. We have also found that the sale of the partnership interest was specifically made subject to the liabilities of the partnership. Consequently, under section 453(b)(2)(A) and section 1.453-4(c) of the Regulations, Rashti's pro rata share of the nonrecourse mortgage is included in his total selling price, as well as in the total payments received by him in the year of the sale. See Sallies v. Commissioner,83 T.C. 44 (1984); Bostedt v. Commissioner,70 T.C. 487 (1978). We conclude, therefore, that under section 453 and section 1.453-4(c), Income Tax Regs., the payments received by Rashti in the year of sale are as follows: Rashti's Share of Liabilities
$ 459,591
Less: Adjusted Basis in p/s Interest
242,654
Liabilities Over Adjusted Basis
216,937
Cash Received
10,175
Total Payments in Year of Sale
$ 227,112
We also conclude that the total selling price of Rashti's *193 interest in the partnership is [Text Deleted by Court Emendation] $ 489,766 computed as follows: Rashti's Share of Liabilities
$ 459,591
Cash Received
10,175
Promissory Note (First Two Installments)
20,000
Total Selling Price
$ 489,766
Since the total payments received and deemed to be received by Rashti in the year of sale exceeds 30-percent of the total selling price, he is not entitled to report his gain on the installment basis. Respondent concedes that R.C.C. is entitled to report its gain under section 453(a). He contends, however, that R.C.C. improperly computed its gross profit percentage and thereby understated its gain from the sale. We agree because section 1.453-4(c), Income Tax Regs., requires that both the selling price and the contract price include R.C.C.'s pro rata portion of the nonrecourse mortgage which the property was subject to. See also Burnet v. S. & L. Bldg. Corp.,288 U.S. 406 (1933); Joe Kelly Butler, Inc. v. Commissioner,87 T.C. 734 (1986). Consequently, R. *194 C.C.'s gross profit and contract price are both $ 137,668 as computed below: Cash Received
$ 15,175
Promissory Note (First Two Installments)
30,000
R.C.C.'s Share of Liabilities
$ 695,279 Less: R.C.C.'s Adjusted Basis in
Partnership Interest
(602,786)
92,493
Contract Price and Gross Profit
$ 137,668
Since R.C.C.'s gross profit and contract price are equal, it is required to take the following into income in the years shown: Year Ending
Year Ending
Year Ending
July 31, 1978
July 31, 1979
July 31, 1980
Total
Payments
received or
[13] $ 92,668
$ 30,000
$ 15,000
$ 137,668
deemed rec'd
Gross Profit
100%
100%
100%
100%
Percentage
Gross Profit
$ 92,668
$ 30,000
$ 15,000
$ 137,668
To reflect the foregoing as well as concessions made by the parties, Decisions will be entered under Rule 155. *195 Footnotes
1. The record contains no explanation of why the total of these figures is not equal to the partners' capital accounts as shown on the balance sheet. ↩
2. The note provided that if the payee (Rashti) was required to pay interest on any amount due by him to the partnership (the negative balance in his capital account) offsetting interest would be due by Hickman on the last seven payments. The pertinent portion of the note with respect to the payment of principal and interest is as follows: * * * The principal of and interest upon this note shall be due and payable * * * as follows: (a) The principal sum of $ 10,000.00 shall be due and payable on January 1, 1979, with a like sum due and payable on January 1, 1980. Interest computed at seven percent (7%) per annum on the principal sum of $ 20,000.00 shall be due and payable on January 1, 1979. Interest computed at seven percent (7%) per annum on the principal sum of $ 10,000.00 shall be due and payable on January 1, 1980. (b) Beginning on January 1, 1981 and on each succeeding January 1 thereafter through and including January 1, 1986, the principal sum of $ 26,559.50 shall be due and payable. On January 1, 1987, the principal sum of $ 26,560.00 shall be due and payable. (c) To the extent Payee is required to pay interest, other than that provided in (a) above, on any amounts due MILLER MANOR APARTMENTS, LTD. (the "Partnership"), Maker shall pay Payee interest in an amount sufficient to offset any interest paid to the Partnership by Payee. * * * ↩
3. R.C.C.'s note from Hickman contained in effect the same provision as that shown at n. 3, pages 5-6 with respect to Rashti's note. ↩
*. Since the total payments in the year of the sale exceeded 30 percent of the selling price, the entire amount recognized of $ 247,112.00 is includable in gross taxable receipts during 1978. ↩
4. All section references are to the Internal Revenue Code of 1954, as amended, during the years in issue unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided. ↩
5. Section 741 is applicable even though the sale of the partnership interest results in a termination of the partnership under sec. 708(b), as in the case before us. Sec. 1.741-1(b), Income Tax Regs.↩
6. Section 1001(b)↩ provides: "The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. * * *" 7. The stipulated bases take into account the increase in basis resulting from the deemed distribution. Sections 752(b) and 705(a)↩. 8. Section 1.752-1(e), Income Tax Regs., provides in part: "where none of the partners have any personal liability with respect to a partnership liability (as in the case of a mortgage on real estate acquired by the partnership without the assumption by the partnership or any of the partners of any liability on the mortgage), then all partners, including limited partners, shall be considered as sharing such liability under section 752(c)↩ in the same proportion as they share the profits. * * *" 9. Not including the remaining installments of $ 185,917. ↩
10. Not including the remaining installments of $ 104,140. ↩
11. During the taxable years in issue section 453 read as follows: SEC. 453. INSTALLMENT METHOD. (a) DEALERS IN PERSONAL PROPERTY. -- (1) IN GENERAL. -- Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price. * * * (b) SALES OR REALTY AND CASUAL SALES OF PERSONALITY. -- (1) GENERAL RULE. -- Income from -- (A) a sale or other disposition of real property, or (B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $ 1,000, may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a). (2) LIMITATION. -- Paragraph (1) shall apply -- (A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition -- (i) there are no payments, or (ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price. ↩
12. The 30 percent limitation was eliminated by sec. 2(a) of the Installment Sales Revision Act of 1980, Pub. L. 96-471, 94 Stat. 2247. ↩
13. The 1978 payment is computed as follows: ↩
Cash
$    175
R.C.C.'s Share of Liabilities
$ 695,279
Less: R.C.C.'s Adjusted Basis in
Partnership Interest
(602,786)
92,493
Payments Received and
deemed Received in 1978
$ 92,668